**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SHAWN DWAYNE BUCKNER         *

Plaintiff                      *

v.                             *      Civil Action No. RWT-14-789

E.P.R.U.C. SHIFT, et al.           *

Defendants              *
                              ***

**<u>MEMORANDUM</u>**

Pending in the above-captioned civil rights case are a Motion to Dismiss filed on behalf of Defendant E.P.R.U.C. Shift and a Motion to Dismiss or for Summary Judgment filed on behalf of the remaining Defendants.  ECF Nos. 13 and 21.  Plaintiff opposes both motions.  ECF Nos. 18 and 23.  The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014).

**Background**

Plaintiff Shawn Dwayne Buckner ("Buckner") alleges correctional staff failed to protect him from a violent assault by another inmate while he was confined to the Eastern Pre-Release Unit (EPRU) on May 1, 2012.  Buckner was stabbed in his right eye and hit in the head with a metal object while he slept.  The assault occurred at approximately 1:30 a.m., a time when there is no permissible inmate movement in the institution.  Buckner states that the inmates subsequently charged with assaulting him were assigned to a different dorm and had to come down a 40 to 60 foot hallway visible from the control center in order to reach the area where he was sleeping.  He alleges his assailants should have been stopped by the officer working in the

control center or the officer that should have been making rounds through the prison.  ECF No. 1 at 3.

In an amended complaint Buckner alleges that Defendants Lt. B. Caley and Sgt. Chad Keegan were the first and second officers in charge at EPRU at the time of his assault and were responsible for ensuring each officer was at their assigned post.  Buckner further alleges that Defendant Officers Keith Curtis, Robert Caniglio, Theodore Jones, and Michael Hancock were possibly stationed in areas of EPRU where they could have seen Buckner's assailants walking through the hallway.  Buckner adds that his assigned bunk was in the back of the dorm and if officers had been doing their jobs properly his assailants would have either been caught in the act or too nervous for fear of being caught out of bounds.  He states he woke from his sleep fighting off the attack and screamed for assistance from the officers for at least two minutes.  Although Buckner states he was blinded by the darkness as well as blood from his wounds, he was able to make out dark images running through the dorm door.  ECF No. 10 at 2 – 3.

Defendants[1] assert that on April 30, 2012, just after midnight, Buckner reported to Lt. Caley that he had been assaulted by an unidentified inmate while he was asleep. ECF No. 21-4.  Lt. Caley and Officer Curtis rendered basic first aid.  ECF No. 21-5.  Buckner had been struck in the eye, top of the head, and left hand with an unknown object.  First aid was administered to Buckner and he was immediately transported to Chester River Hospital Emergency Room.  At 3:20 a.m., the following morning, it was reported that Buckner had a screw embedded in his eye and, a short while later, Buckner was sent to University of Maryland Hospital by State Police Medivac.  ECF No. 21-2 at 6 -7.

---

[1] Defendant "E.P.R.U.C. Shift" was initially named by Buckner because he could not identify by name the officers on duty when he was assaulted.  A Motion to Dismiss was filed on behalf of that Defendant which shall be granted. ECF No. 13.  A civil rights claim filed pursuant to 42 U.S.C. §1983 must be alleged against a person.

Buckner later identified his assailants as Damon King and Troy Morton. Buckner claimed that the day before the assault he had confronted King and Morton about how their activities in extortion and the introduction of contraband into the facility was jeopardizing the privileges of other inmates confined to EPRU. Buckner's version of the dispute, however, was not confirmed by the Internal Investigation Unit (IIU) during its investigation into the assault. Confidential informants advised IIU investigators that the assault on Buckner was the result of a "hit" placed on him after it was learned that Buckner had stolen "K-2"[2] from an inmate holding property for Morton. Buckner and Morton allegedly exchanged words about the theft. ECF No. 21-2 at 8 – 9.

Defendants state that Buckner never expressed any fear of assault to any of them. ECF No. 21-1 at 7. Additionally, Defendants Keegan, Caniglio, and Jones state they were not on duty on the date of the incident, nor were they on duty the day Buckner confronted King and Morton. ECF No. 21-10. Defendants state that Buckner never filed a complaint pursuant to the administrative remedy procedure regarding the assault he suffered.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[2] K-2 is otherwise known as synthetic marijuana and is made using herbs, incense, or other leafy materials which are sprayed with lab-synthesized liquid chemicals to mimic the same psychoactive ingredient in marijuana. *See* http://www.drugs.com.

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

### Exhaustion of Administrative Remedies

Defendants first assert that Buckner never filed an ARP complaint and "has filed only three grievances" with the Inmate Grievance Office (IGO). ECF No. 21. Although reference is made to a statement by the Executive Director of the IGO regarding the substance of Buckner's grievances, that statement is not before this Court. ECF No. 21-1 at 10. Buckner does not address the failure to exhaust administrative remedies in his Opposition Response. ECF No. 23. What is clear from the record, however, is that an investigation was conducted by the IIU into Buckner's assault. Thus, to the extent the purpose of administrative exhaustion was served through that investigation, this Court is reluctant to dismiss the Complaint on the bald assertion that Buckner failed to avail himself of the process. The merits of the claim shall be addressed.

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Plaintiff must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (internal quotation marks and citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Buckner's claim is that Defendants knew or should have known that failure to make security checks or to adequately staff important posts would result in the sort of harm that befell him. ECF No. 23 at 2. Defendants assert they had no forewarning that Buckner's assailants would attack him, as they were not informed of an issue existing between Buckner and the two inmates who stabbed him. ECF No. 21-1 at 7. Moreover, Defendants claim that the failure to fulfill job assignments adequately is a negligence claim and does not suffice to establish the requisite deliberate, callous disregard required for an Eighth Amendment claim. *Id*. Indeed, Buckner does not allege that the failure in security was a deliberate act meant to provide his assailants the opportunity to inflict grievous bodily harm on him. Buckner also does not address

the assertion that he knew there was a conflict existing between himself and the two inmates who assaulted him, or why he neglected to inform security staff of the issue.   Defendants Caley and Curtis, the only two Defendants who have a direct connection with the events giving rise to the Complaint, are entitled to summary judgment as there is no evidence they acted with callous disregard to Buckner's safety.   Defendants Keegan, Caniglio, and Jones are entitled to summary judgment in their favor as they have produced evidence that they were not working at the prison on or around the time of the incident and were not in a position to take affirmative steps to prevent the assault.

A separate Order follows.


January 15, 2015                              _____/s/_____
Date                                          ROGER W. TITUS
                                              UNITED STATES DISTRICT JUDGE